UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**DANIEL J.,**

       **Plaintiff,**

v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

       **Defendant.**

Case No. 3:20-cv-9053
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Daniel J., who is proceeding without the assistance of counsel, for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.     PROCEDURAL HISTORY**

On May 12, 2015, Plaintiff filed an application for benefits, alleging that he has been disabled since January 10, 2013. R. 137, 229–30, 354–55. The application was denied initially and upon reconsideration. R. 251–56, 258–64. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge. R. 265–66. Administrative Law Judge ("ALJ") Karen Shelton held a hearing on June 13, 2018, at which Plaintiff, who was represented by counsel, testified. R. 138–83. The ALJ held a supplemental hearing on September 6, 2018, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 184–208. In a partially favorable decision dated October 3, 2018, the ALJ concluded that Plaintiff was disabled within the meaning of the Social Security Act from January 10, 2013, Plaintiff's alleged disability onset date, through May 20, 2015, but has not been disabled since May 21, 2015. R. 107–26. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 26, 2020. R. 1–7.

Proceeding without the assistance of counsel, Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1.[2] On April 9, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11, 16.[3] On April 13, 2021, the case was reassigned to the undersigned. ECF No. 12. The matter is now ripe for disposition.

II.     **LEGAL STANDARD**

   A.     **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[2] As reflected in the above recitation, Plaintiff was represented by counsel throughout the underlying administrative proceedings. *See also* R. 249 (appointment of representative dated May 13, 2015), 517–18 (representative brief addressed to the Appeals Council dated December 11, 2018).

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

4

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

Finally, as previously noted, Plaintiff is proceeding in this case without the assistance of counsel. Courts have a duty to liberally construe *pro se* litigants' filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 340 (3d Cir.

5

2011) ("Pro se pleadings are often submitted by individuals with limited skills and technical expertise in the law."). Despite this liberal construction, however, "unrepresented litigants are not relieved from the rules of procedure and the requirements of substantive law." *Parkell v. Danberg*, 833 F.3d 313, 324 n.6 (3d Cir. 2016) (citations omitted); *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (stating that *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants") (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "While a court must construe a pro se litigant's pleadings liberally, it need not act as [the litigant's] advocate." *United States v. Peppers*, 482 F. App'x 702, 704 (3d Cir. 2012).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of

6

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was a younger individual (between ages 18 and 44) on the established disability onset date. R. 116. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 10, 2013, the disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments from January 10, 2013, through May 20, 2015, the period during which Plaintiff was found to be disabled: reconstructive surgery of a weight bearing joint, dysfunction of major joints,

degenerative disc disease, hypertension, migraines, affective disorder and anxiety disorder. R. 112.

At step three, the ALJ found that, from January 10, 2013, through May 20, 2015, Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 112–13.

At step four, the ALJ found that, from January 10, 2013, through May 20, 2015, Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 113–16. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a bus driver, truck driver, or material handler. R. 116.

At step five, the ALJ found that, from January 10, 2013, through May 20, 2015, and considering Plaintiff's age, education, work experience and RFC, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed. R. 116–17. The ALJ therefore concluded that Plaintiff was under a disability, as defined by the Act, from January 10, 2013, through May 20, 2015. R. 117.

However, the ALJ went on to consider whether Plaintiff remained disabled beginning on May 21, 2015. R. 117–26. At step two, the ALJ found that Plaintiff's severe impairments were the same as those present during the established period of disability. R. 117.

At step three, the ALJ found that, beginning on May 21, 2015, Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 117–19.

The ALJ found that Plaintiff's medical conditions had improved as of May 21, 2015. R. 119. The ALJ also found that this medical improvement resulted in an increase in Plaintiff's RFC. R. 120.

At step four, the ALJ found that, beginning May 21, 2015, Plaintiff had an RFC for a reduced range of sedentary work, R. 120–24, and that this RFC did not permit the performance of his past relevant work as a bus driver, truck driver, and material handler. R. 124–25.

At step five, the ALJ found that, beginning May 21, 2015, a significant number of jobs— *i.e.*, approximately 248,810 jobs as a sorter; approximately 26,670 jobs as a polisher; approximately 145,290 jobs as a printed circuit board inspector—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 125. The ALJ therefore concluded that Plaintiff's period of disability ended on May 20, 2015, and that since May 21, 2015, he has not been disabled within the meaning of the Social Security Act through the date of the ALJ's decision. R. 125–26.

Construing his filings liberally, *see Erickson*, 551 U.S. at 94, Plaintiff apparently disagrees with the ALJ's findings at step four for the period beginning on May 21, 2015, through the date of the ALJ's decision, and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Brief,* ECF No. 18; *Plaintiff's Supplemental Brief*, ECF No. 20. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 21.

## IV.  DISCUSSION

Plaintiff appears to argue that the ALJ erred in determining Plaintiff's physical and mental RFC. *See generally Plaintiff's Brief,* ECF No. 18; *Plaintiff's Supplemental Brief*, ECF No. 20; *see also Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21, pp. 7–13

(construing Plaintiff's arguments as a challenge to the RFC determination). Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ found that Plaintiff's condition improved as of May 21, 2015. R. 119. In making this finding, the ALJ specifically considered that Kenneth Swan, M.D., who performed an orthopedic examination in May 2015, opined that Plaintiff had reached maximum medical improvement. R. 119; *see also* R. 814 (excerpt from Dr. Swan's examination records). The ALJ also considered that Dr. Swan further opined that Plaintiff could perform sedentary to light walking activities and that Plaintiff could lift 30 pounds. *Id*. The ALJ further noted that "[s]ubsequent examinations showed his gait was much improved and he had

good strength in his lower extremities. The claimant stated his ability to perform his daily activities was improved." R. 119 (citations omitted).

The ALJ went on to find that this medical improvement resulted in an increase in Plaintiff's RFC. R. 120. The ALJ specifically found that, beginning on May 21, 2015, Plaintiff had the RFC to perform a limited range of sedentary work, as follows:

> After careful consideration of the entire record, the undersigned finds that, beginning May 21, 2015, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he is able to lift 20 pounds occasionally and 10 pounds frequently; he is able to stand and/or walk for two hours and sit for six hours during an eight-hour day; he is able to occasionally climb ramps or stairs, balance, stoop, kneel and crouch but never climb ladders, ropes or scaffolds or crawl; he must avoid exposure to unprotected heights and hazardous machinery; he is able to understand, remember and carry out simple, routine and repetitive tasks in a workplace free of fast paced production requirements and make simple work related decisions with few if any workplace changes; he is able to work for two hours before requiring a break but he must avoid more than frequent contact with supervisors and co-workers and no more than occasional interaction with the public that is brief and superficial in nature.

*Id*. In making this determination, the ALJ detailed years of record evidence relating to his physical impairments as of May 21, 2015, including, *inter alia*, that orthopedic evaluations in July 2015, revealed that, although Plaintiff reported increased low back pain, knee pain, and Achilles pain over the prior several weeks and although an examination was positive for tenderness in his lumbar spine and his range of motion was somewhat painful, straight leg raises were negative and he had good range of motion and strength in his lower extremities despite mild swelling and tenderness in his Achilles; that Plaintiff recently purchased a bicycle and was riding around the block without pain in his right leg; that a November 2015 consultative examination performed by Merlin, Francky, M.D., revealed that Plaintiff's gait was antalgic and he had difficulty getting on and off the examination table, but Plaintiff was in no acute distress, Plaintiff's grasp strength and manipulative function were not impaired and he was able to squat

and flex his spine forward to 90 degrees, there was tenderness in his lumbar spine and right leg but he had good strength in his upper and lower extremities and an x-ray of his right leg showed that his fracture had healed; that examinations in February and April 2016 revealed that Plaintiff was in no acute distress and his gait was normal without any neurological deficits, Plaintiff rated his pain as eight out of ten without medication and five of ten with medication and his functioning level as five out of 10 without medication and eight out of 10 with medication and he continued on Gabapentin and Percocet; an August 2016 examination showed that the Plaintiff was in no acute distress and had a normal gait, that Plaintiff was offered but declined epidural injections for his lumbar spine; that Plaintiff stated during physical therapy in November 2016 that his gait was much better overall, that he continued to have less pain, and that he was able to perform most activities but he was limited in the time he could do them, and it was noted that he was readying for discharge and progression to self-management; that a July 2017 medical evaluation revealed that, although Plaintiff had some pain in his right leg, he ambulated well and had good flexibility and was able to touch his ankles, that extension of his lumbar spine was also painful but his strength was intact in his hips, knees and ankles and he had good range of motion in his right knee and his right ankle was able to get to neutral although it was stiff to further dorsiflexion; that an x-ray of the lumbar spine was normal and, although there was trace medial sided arthritis in his right knee, there was no significant arthritis in his right ankle; that in October and December 2017, Plaintiff reported intermittent right knee pain and low back pain that occasionally radiated up his spine but he denied any radiation to his lower extremities; that examinations were positive for stiffness in his lumbar spine but straight leg raises were not painful and he had good strength in his hips, knees and ankles with good range of motion in his right knee, but pain with forced flexion; that in December 2017, Plaintiff presented to the

emergency department with dizziness, resulting in the administration of medication and advice that he follow-up with his primary care provider for blood pressure management; that during a follow-up evaluation, he reported improvement in his dizziness with medication but continued to experience symptoms when bending over and standing upright; that a balance assessment was inconclusive and there was no evidence of additional treatment prior to his date last insured. R. 120–23. In evaluating the period beginning May 21, 2015, the ALJ assigned great weight to the opinions of the state agency reviewing medical consultants who opined that Plaintiff was capable of exertional work at the sedentary exertional level in that he is able to lift 20 pounds occasionally and 10 pounds frequently, and can occasionally climb ramps or stairs, balance, stoop, kneel and crouch, but can never crawl or climb ladders, ropes or scaffolds, and must avoid concentrated exposure to hazards. R. 123

The ALJ also detailed years of record evidence relating to Plaintiff's mental impairments since May 21, 2015, including, *inter alia*, a psychological evaluation performed in November 2015 by William Coffey, Psy.D., which reflected findings of a normal mood, appropriate affect, and no problem following the topic of conversation or participating in the interview; Plaintiff was oriented in three spheres with intact attention, was able to recall the examiner's name as well as five digits forward and three digits in reverse; Plaintiff could repeat three simple objects immediately and two objects after five minutes, perform serial sevens, and perform simple mathematical calculations; Dr. Coffey estimated Plaintiff's intelligence to be in the borderline to low average range and Plaintiff's insight and judgment were adequate; Plaintiff reported to Dr. Coffey that he was being treated once a month for depression and anxiety and, as to his daily activities, reported that he helped with laundry, mowed the lawn with a push mower, could drive short distances, and was independent with his self-care and grooming; Plaintiff also reported that

he had friends but that he did not see them as much as previously; in an August 2016 examination, Plaintiff reported that he had stopped taking his psychotropic medication several months previously and that his anxiety was stable; he denied any depression or mood swings; a July 2017 mental status examination showed that his thought process was clear and direct, his recent/remote memory was intact, and his insight/judgment were good; it was noted that Plaintiff experienced depression due to pain and it was recommended that he should have monthly medication management. R. 124.  The ALJ also assigned great weight since May 21, 2015, to the opinions of state agency reviewing psychiatric consultants that Plaintiff is able to follow simple instructions and relate adequately in a work like setting, maintain concentration, persistence, pace and attendance standards and moderate limitations interacting socially. R. 123–24. The ALJ went on to discount Plaintiff's subjective complaints and further explained the RFC determination as follows:

> The claimant's allegations of a disabling condition are not fully consistent with his treatment notes. While his medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, the objective medical evidence does not reasonably substantiate his allegations about intensity, persistence and functionally limiting effects of the symptoms. The claimant testified he is not able to work due to limited mobility in his right leg following a motor vehicle accident. He also testified he had low back pain and he could not sit or stand for extended periods. As noted above, the claimant experienced significant limitations until May 2015; however, with physical therapy and surgery on his right ankle he continued to report less pain in his right leg and he was ambulating well (Exhibits 30F/l, 46F/6). He stated he was taking less pain medication, his functioning level was improved and he was able to do most tasks if he limited the amount of time he performed them (Exhibits 28F/1, 30F/l). Examinations showed some range of motion limitations in his lumbar spine, right knee and right ankle but he was in no acute distress and he had good strength (Exhibits 11F/2-4, 13F, 16F/3, 28F/2, 28F/26, 30F/1, 46F/3-6). Despite his subjective complaints, he stated he recently purchased a bicycle and he was riding around the block without pain in his right leg (Exhibit l 1F2-4). He also stated he mowed his lawn with a push mower and he was able to take a flight from Tampa (Exhibits 12F/3, 28F/3). The claimant's treatment notes also show he was treated for hypertension and headaches; however, the evidence fails to show any significant objective findings that would prevent work within the residual functional capacity. Given the relatively mild objective

14

> findings and the claimant's reported level of activities, the undersigned finds the claimant is able to perform a reduced range of sedentary work.
>
> With regard to his mental impairments, since May 2015 there was minimal treatment for his affective disorder and anxiety disorder. In August 2016 he stated he stopped taking his psychotropic medication several months prior and his anxiety was stable. He also denied any depression or mood swings (Exhibit 28F/l). In July 2017 it was noted he was experiencing depression due to pain and he should have monthly medication management but a mental status examination was unremarkable (Exhibit 36F). The claimant underwent a consultative examination that showed his mood was normal and he did not have any problem following a conversation or participating in the interview. His memory, attention and concentration was intact (Exhibit 12F). There is a history of depression and anxiety but given the mild objective findings and minimal treatment, the undersigned finds he is able to perform simple, routine and repetitive tasks with frequent contact with supervisors/co-workers and only occasional contact with the public. The undersigned acknowledges that the claimant does experience some limitations but not to the extent alleged.

R. 124. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination for the period beginning May 21, 2015. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff challenges this determination, complaining that "[f]rom the time of the accident up to present I'm still suffering from Mental issues, Ptsd, Lower Back problems, Right Leg fracture, Loss of Balance issues, Can't Stand for long, Knee pain in Both Knees, Rod in Right Leg, High Blood Pressure, Heart problems." *Plaintiff's Brief*, ECF No. 18, PAGEID#1356 [sic]; *see also Plaintiff's Supplemental Brief*, ECF No. 20, PAGEID#1362 (same). Notably, however, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Plaintiff, who bears the burden at step four, *see Smith*, 631 F.3d at

634, does not identify—nor can the Court locate—any specific functional limitations flowing from these conditions that the ALJ failed to include in the RFC. *See generally Plaintiff's Brief*, ECF No. 18; *Plaintiff's Supplemental Brief*, ECF No. 20. Therefore, Plaintiff's argument in this regard will not serve as a basis for undermining the RFC found by the ALJ and remanding this action. *See Pickerin v. Colvin*, No. 14-6130, 2016 WL 5745103, at *5 (D.N.J. Sept. 30, 2016) (affirming the ALJ decision where "Plaintiff does not offer any specific limitations that the ALJ should have included in the RFC assessment . . . [and b]ecause it is Plaintiff's burden to show that the ALJ's finding of residual functional capacity was not supported by substantial evidence, and Plaintiff has not identified any specific error").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC for the period beginning May 21, 2015, through the date of the administrative decision are consistent with the record evidence and enjoy substantial support in the record.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  March 23, 2022                              *s/Norah McCann King*
                                            NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE